## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|                             |   |                          |
|-----------------------------|---|--------------------------|
| In re                       | : |                          |
|                             | : | Chapter 11               |
| TRUMP ENTERTAINMENT          | : |                          |
| RESORTS, INC., *et al.*,     | : | Case No. 14-12103(KG)    |
|                             | : | (Jointly Administered)   |
| Debtors.                    | : |                          |
| _____ | : | **Re: D.I. 295**         |

### MEMORANDUM OPINION RE MOTION OF LEVINE, STALLER, SKLAR, CHAN & BROWN, P.A. FOR ENTRY OF AN ORDER FIXING THE VALUE AND PRIORITY OF, <u>AND ALLOWING ITS CLAIM AS SECURED IN FULL</u>

The Court has before it for decision the Motion of Levine, Staller, Sklar, Chan & Brown, P.A. for Entry of an Order Fixing the Value and Priority of, and Allowing its Claim as Secured in Full, Pursuant to 11 U.S.C. § 506(a) and Rule 3012 of the Federal Rules of Bankruptcy Procedure (the "Motion"). D.I. 295. Debtors, Trump Plaza Associates, LLC, Trump Taj Mahal Associates, LLC and Trump Marina Associates, LLC, are opposing the Motion, as are Icahn Agency Services, LLC, Icahn Partners LP, Icahn Partners Master Fund, LP, and IEH Investments I LLC (the "Icahn Entities"), lenders to Debtors, who claim they hold a secured first lien against all of Debtors' assets. The Motion is brought to Sections 105(a) and 506(a) of Title 11 of the United States Code.

### <u>FACTS</u>[1]

Prior to Debtors' bankruptcy filing on September 9, 2014, in early 2008, the Debtors engaged Levine, Staller, Sklar, Chan & Brown, P.A., a New Jersey law firm (the "Firm"),

---

[1] The facts are undisputed. The Court will refer to Debtors' hearing exhibits as "DX_" and the Firm's hearing exhibits as "FX_". The Court admitted all offered exhibits into evidence without objection.

to file tax appeals on their behalf in the Tax Court of New Jersey (the "Tax Court") for casino hotel properties which they owned.  The casinos involved in the tax appeals were Trump Plaza, Trump Taj Mahal and Trump Marina, all located in Atlantic City, New Jersey.

The Firm achieved a settlement in June 2012, which resulted in a reduction of the tax assessments on Debtors' properties and a cash refund of $35.5 million in cash and $15 million in credits against future taxes due and owing for Trump Taj Mahal in calendar year 2013 (the "Tax Refund").  On June 22, 2012, the Tax Court entered judgment on the settlement (the "Tax Court Judgment"). The benefit from the Firm's efforts actually exceeds the $50.5 million, since the tax assessment reduction continues into the future, a significant benefit to Debtors on which the Firm will not receive any fee.

The Firm had undertaken the representation pursuant to a written agreement, dated June 17, 2008,  and the Firm agreed to be paid a reduced hourly rate which would be credited against a contingency fee of 17.5% based on any tax savings from the appeals. DX2.  Debtors received $35.5 million in cash from the City of Atlantic City in payment of the cash portion of the Tax Refund on December 20, 2012, which Debtors deposited in their bank account.  FX4.  The cash was unrestricted, not segregated,  and available to pay ordinary operating expenses.  Discussions then ensued, in which Debtors' present bankruptcy counsel, Stroock & Stroock & Lavan, ("S&S&L") participated. FX6.  These discussions addressed Debtors' need for cash and payment of the Firm's fee in installments rather than in a lump sum.  The Firm agreed to the delayed payment schedule to

accommodate Debtors.

The parties also negotiated and agreed that the Firm would file a motion in the Tax Court for a perfected statutory attorney's charging lien for the protection of the Firm's unpaid fee. On December 5, 2012, as agreed, the Firm filed a Notice of Motion Establishing and Perfecting Attorney's Charging Lien with the Tax Court and served a copy on S&S&L. On December 24, 2012, the Tax Court entered an Order Establishing and Perfecting Levine Staller's Attorney's Charging Lien (the "Charging Lien") in the amount of the contingent fee. FX5.

Thereafter, Debtors and the Firm entered into several amendments of their original fee agreement, in or effective as of January, June and December 2013, whereby the Firm ultimately reduced the contingency fee from $8,837,500 (17.5% of the $50.5 million refund) to $7,250,000. DX's 4,5 and 6. The Firm also agreed to a payment schedule with the final payment due on July 30, 2014. DX7. Importantly, on February 7, 2013, the Debtors and the Firm entered into a revised fee agreement dated as of January 1, 2013, in which Debtors acknowledged the Charging Lien and agreed that "nothing contained herein shall affect, reduce or nullify the attorney's charging lien obtained and perfected by [the Firm] in the Settlement proceeds received by [Debtors] ...." DX4. Also significantly, an amended fee agreement in June 2013, included acknowledgment of the Charging Lien as well as a provision for interest at the rate of 8% per annum in the event of default, and payment for the Firm's reasonable attorney's fees and expenses in enforcing the judgment of the Tax Court. DX5. Following the June 2013 amended agreement, the Firm again obtained an

order from the Tax Court perfecting its Charging Lien. FX 10.

On July 31, 2014, Debtors informed the Firm that they would not pay the last installment of $1.25 million. In response, on August 5, 2014, the Firm filed a Notice of Motion to Enforce its Perfected Charging Lien in the Tax Court. Debtors opposed the motion and the Tax Court conducted a hearing on August 26, 2014. FX 11. The Debtors unequivocally acknowledged they owed the $1.25 million to the Firm. FX 11 at 30. Debtors, at that time represented by a firm other than S&S&L, also acknowledged that they did not oppose the existence and validity of the Charging Lien and so stated clearly on the record. *Id.* at 26.

The Tax Court at the hearing granted the Firm's motion and stated:

> I'm inclined to grant the application of Levine, Staller. I think this Court does have jurisdiction. There's been a concession. Essentially the Court has jurisdiction to enter the attorney's lien and that I think is confirmed by the Appellate Division decision in the Pine Street case in which there was a discussion of a Tax Court entering an attorney's charging lien and the Appellate Division did not have a moment to pause, it seemed, with respect to the jurisdiction of that.
>
> With respect to the summary nature of the proceedings, I think the objection to the summary proceedings would have been at the time the attorney's liens were sought. That's when the objection should have been raised and it wasn't. And I believe it wasn't raised because - - I find credible the explanation provided by Levine, Staller that there's no dispute with respect to the amounts due, that it was a procedure that was contemplated by the agreements, there was notice provided and the taxpayers here had a separate firm, law firm, representing them in the negotiations with respect to the amounts that would be paid to Levine, Staller. The agreement was modified on a number of occasions and on two occasions, Levine Staller sought to perfect the lien with notice to the

4

taxpayer's other counsel, the Stroock firm, and no objections were raised. And I believe that that was what the taxpayer did acquiesce in the entry of the liens and there was no reason for anything but a summary proceeding there because there was really no dispute that the fees were due. And even today Mr Packman concedes that $1.25 million is still due to the levin firm. So I think that overcomes any question with respect to the summary nature of the proceedings.

The order of judgment that you submitted is too broad. It indicates judgments entered in favor of Levine, Staller against the plaintiffs in the amount of 1.25 million. I will alter to say that judgments entered with respect to the proceeds that were received by the taxpayers as a result of the Tax Court judgments in the matters that are noted.

*Id.* at 40-45.

The Tax Court entered an Order of Judgment, dated August 26, 2014, which provided, in pertinent part:

2.      The sum of $1.25 million is due Levine Staller on the proceeds realized by Plaintiffs as a result of the Tax Court Judgments issued in connection with the above captioned matters pursuant to the Order of this Court establishing and perfecting an attorney's lien entered July 12, 2013 in the above-captioned matters; and

3.      A Writ of Execution in the amount of $1.25 million shall be forthwith issued by this Court so that Levine Staller may execute on the proceeds realized by Plaintiffs as a result of the Tax Court Judgments issued in connection with the above-captioned matters.

FX 12.

The Tax Court issued a Writ of Execution directing the Sheriff of Atlantic County to satisfy the $1.25 million judgment by levying on an account of Debtors at its bank, TD Bank, which the Sheriff thereafter served. FX 13.

In summary, the critical and uncontested facts reveal that:

1.      The Debtors and the Firm had a written engagement agreement which provided for a contingency fee in the event of a successful result.

2.      The Firm achieved the successful result.

3.      The Debtors renegotiated and reduced the fee and the Firm worked with Debtors to permit payment over time in consideration of Debtors' cash flow difficulties.

4.      The Debtors failed to pay $1.25 million of the agreed fee.

5.      The Debtors agreed before the Tax Court that the remaining fee was due and owing and, represented by counsel, consented to the Charging Lien.

6.      The Firm executed on the Tax Court Judgment.

## JURISDICTION

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (B), and (O).  Venue of these proceedings and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief sought herein include 11 U.S.C. §§ 105(a) and 506(a), and Rule 3012 of the Bankruptcy Rules.

## DISCUSSION

### 1.  Validity and Perfection

In light of the facts, the Court finds Debtors' challenge to the Firm's lien and their disparagement of the Firm and its fees unsettling.  Debtors do not merely contest the validity of the Charging Lien on legal grounds.  Debtors instead denigrate the amount of the fee, the Firm's effort, the Firm's ethical conduct in seeking to protect its fee (while

continuing to employ the Firm) and, finally, challenge the process by which the Firm obtained the Charging Lien to which they agreed on the record before the Trial Court. All the while, Debtors enjoy the fruits of a $50.5 million tax refund with additional benefits flowing into the future from the Firm's labor.

The Court agrees fully with the Firm that under New Jersey law, applicable here, and in particular the New Jersey Attorney's Lien Statute, the Firm has a statutory charging lien from the commencement of the appeals it filed on Debtor's behalf in 2008 and that such lien attached to the judgments and all proceeds thereof in whosoever hands they may come. The New Jersey statue, N.J.S.A. 2A:13-5 provides as such.

It is readily apparent that the Tax Court fixed, adjudicated and determined the consensual -- or at the very least unopposed -- charging lien in favor of the Firm. The Court may not review and, in effect, reverse such judgment under the "Rooker-Feldman Doctrine" which prohibits a district court or a bankruptcy court from adjudicating actions which would require either court from determining the correctness of or voiding a state court's ruling. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *In re Knapper*, 407 F.3d 573, 580 (3d Cir. 2005). Under the facts and circumstances presented, the Court need not delve into whether or not the Firm followed the statutory requirements for perfection of their lien. The Tax Court's ruling stands by virtue of a well-settled doctrine of federalism and, therefore, the Firm's charging lien is a perfected, secured lien.

The Tax Court Judgment, to which Debtors consented, provides that the Lien is perfected. Debtors and the Icahn Entities argue that the Firm failed to follow the governing New Jersey statute with precision. Specifically, they argue that the statute required a

plenary rather than the summary proceeding.  The Court does not agree with Debtors and the Icahn Entities.  Where, as here, the Firm was proceeding with consent, a plenary hearing was not required.  Plenary proceedings are only necessary under New Jersey law when there is a dispute over a material fact.  *Heljon Management Corp. v. Di Leo*, 55 N.J. Super. 306 (App. Div. 1959).  Here, the Tax Court recognized that "there was no reason for anything but a summary proceeding there because there was really no dispute that the fees were due."  FX 11 at 43.

The Firm agreed to allow Debtors to use the refunded cash for general operations rather than requiring Debtors to segregate the money.  Debtors and the Icahn Entities thus argue that the refunded cash is gone, is not traceable, and, accordingly, the Charging Lien attaches to nothing.  The Firm permitted Debtors to spend the refund and, therefore, the refunded cash is no longer available.  In the unusual context of this case and given the New Jersey statute, the fact that Debtors spent the refunded cash does not hinder the Firm's claim.  The New Jersey statute provides that the Charging Lien attaches to "the proceeds thereof in whose hands they may come."  N.J.S.A. 2A:13-5; Under New Jersey law, the attachment to proceeds "in whose hands they may come" exempts the charging lienor from having to identify a specific, isolated fund.  *James v. Harris*, 127 A. 2d 215, 216 (N.J. Super. 1956).  Accordingly, the Charging Lien attaches to Debtors' cash, subject only to priority treatment.

2.  Relation Back and Priority

Under New Jersey law, the charging lien relates back to the Firm's commencement of the Tax Appeal in 2008.  *See, e.g., Tannenbaum v. Smith* (*In re Smith*), 263 B.R. 71, 78

(Bankr. N.J. 2001): and *Marsh v. Murphy*, N.J. Eq. 302, 305 (E.&A. 1941).  Accord, *Musikoff v. Jay Parrino's The Mint, L.L.C.* 172 N.J. 133, 136 (2002).

Although the Firm's lien relates back to 2008, it is later in time than the lien of the Icahn Entities.  The record reflects, and the Firm does not contest, that the Icahn Entities' secured lien dates back to 2007.  Nonetheless, the Firm argues that the Charging Lien "trumps" the Icahn Entities' lien.

The Court does not agree with the Firm.  The secured status of the Firm's Charging Lien is one matter; priming a pre-existing lien is quite another.  On the priming issue, the Icahn Entities' arguments are persuasive.[2]  The Icahn Entities point out, correctly, that the Firm's statutory Charging Lien is subject to existing liens.  *Columbia Ins. Co. v. Artale*, 164 A. 864 (N.J. Ch. 1933), affd., 114 N.J. Eq. 268 (1933); *U.S. Certain Lands in Town of Highlands*, 49 F. Supp. 962, 968 (S.D.N.Y. 1943) ("An attorney's lien does not take precedence over liens already encumbering the property").  Also, because the New Jersey statute providing for the Charging Lien, N.J.S.A. 2A:13-5, does not itself contain any provision for priorities of competing liens, the common law rule that "first in time is first in right" applies.  *U.S. v. City of New Britain*, Conn., 347 U.S. 81, 85 (1954); *Monica Fuel, Inc. v. Internal Revenue Service*, 56 F.3d 508, 511 (3d Cir. 1995).  Accordingly, the Firm's Charging Lien, although secured, is behind the lien of the Icahn Entities.

---

[2]  The Icahn Entities argue that Section 545(2) of the Bankruptcy Code is fatal to the Charging Lien.  Since the Court has found that the Charging Lien was, in fact and as a matter of law, perfected, this argument does not apply.

9

## CONCLUSION

For the reasons stated, the Court will enter an Order Granting the Motion in part in accordance with the Opinion.

Dated: December 5, 2014

KEVIN GROSS, U.S.B.J.