## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| TRUMP ENTERTAINMENT | ) | Case No. 14-12103 (KG) |
| RESORTS, INC., *et al.*, | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | **Re: Dkt. Nos. 622 and 726** |

### <u>MEMORANDUM OPINION</u>

The Court is ruling on two motions which arise out of the same set of operative facts: (1) the motion of Tapal Sarker seeking allowance and payment of an administrative expense claim pursuant to Section 503(b)(1)(A)(ii) of the Bankruptcy Code[1]; and (2) the Debtors' (defined below) objection to Mr. Sarker's claim, seeking to reclassify it from a priority claim to a general unsecured claim. For the reasons set forth below, the Court will deny Mr. Sarker's motion, sustain the Debtors' claim objection, and reclassify Mr. Sarker's claim, in full, to a general unsecured claim.

### JURISDICTION

The Court has jurisdiction over this matter and the judicial authority to issue a final order pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

### BACKGROUND

The relevant facts are undisputed. Prior to the Petition Date (defined below), Mr. Sarker was employed by the Debtors. On April 9, 2009, the Debtors terminated Mr.

---

[1] 11 U.S.C. § 101 *et seq.*

Sarker's employment. On August 19, 2010, Mr. Sarker initiated a civil action in the United States District Court for the District of New Jersey (the "District Court") charging the Debtors with violating the Family and Medical Leave Act (the "FMLA") in terminating his employment (the "FMLA Action"). On December 5, 2012, the District Court assigned *pro bono* counsel to assist Mr. Sarker with the FMLA Action trial.

On May 23, 2014, after a three-day trial, a jury found in favor of Mr. Sarker in the FMLA Action and awarded damages in the amount of $47,500.00. On May, 27, 2014, the District Court entered judgment in favor of Mr. Sarker, awarding $47,500.00 in damages, "with costs" (the "FMLA Judgment").[2] On June 13, 2014, Mr. Sarker filed motions with the District Court seeking to amend the FMLA Judgment to include attorneys' fees, costs, and pre- and post-judgment interest. On August 11, 2014, Mr. Sarker obtained a Writ of Execution against a bank account maintained by the Debtors at T.D. Bank, N.A. ("T.D. Bank") in the amount of $47,500.00, and on August 22, 2014, he filed a motion with the District Court seeking turnover of the levied funds (the "Turnover Motion").

On September 9, 2104 (the "Petition Date"), Trump Entertainment Resorts, Inc. and certain of its affiliates (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. On September 25, 2014, Mr. Sarker filed a motion with the Court seeking relief from the automatic stay imposed by Section 362 of the Bankruptcy Code in order to proceed with the Turnover Motion and certain other

---

[2] Pursuant to 29 U.S.C. § 2617(a)(3), in an FMLA action "[t]he court . . . shall, in addition to any judgment awarded to the plaintiff, allow a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action to be paid by the defendant."

post-trial matters pending before the District Court (the "Stay Motion"). On October 22,

2014, the Court entered an order granting the Stay Motion. On November 12, 2014, the

District Court entered an order granting the Turnover Motion and ordering T.D. Bank to

wire transfer payment of $47,500.00 to Mr. Sarker's attorney. On December 1, 2014, the

District Court entered an order amending the FMLA Judgment to include the following

amounts:

| | |
|---|---|
| Pre-Judgment Interest: | $5,142.00 |
| Post-Judgment Interest: | $3,000.00 |
| Attorneys' Fees: | $91,195.95 |
| Costs: | $6,223.78 |
| **Total:** | **$105,561.73** |

On November 24, 2014, Mr. Sarker filed claim number 568 (the "Sarker Claim") in

the Debtors' cases asserting a priority claim in the amount of $105,561.73 pursuant to

Section 507(a)(4) of the Bankruptcy Code. On December 12, 2014, Mr. Sarker filed a

motion with the Court seeking allowance of an administrative expense claim in the

amount of $105,561.73 pursuant to Section 503(b)(1)(A)(ii) (the "Administrative Expense

Motion").[3] On January 7, 2015, the Debtors filed an objection to the Sarker Claim, seeking

to reclassify it, in full, to a general unsecured claim (the "Claim Objection"). On February

3, 2015, the Debtors filed an objection to the Administrative Expense Motion. On February

10, 2015, the Court held a hearing on the Claim Objection and Administrative Expense

Motion and thereafter took the matters under advisement.

---

[3] Mr. Sarker's pleadings in this case make it clear that he seeks allowance of a claim in the amount of $105,561.73 as *either* an administrative expense claim pursuant to Section 503(b)(1)(A)(ii) *or* a priority claim pursuant to Section 507(a)(4). In other words, the Sarker Claim and Administrative Expense Motion are not cumulative.

## ANALYSIS

### A.    Section 503(b)(1)(A)(ii)

Section 503 of the Bankruptcy Code sets forth nine categories of administrative expenses which are given second priority pursuant to Section 507(a)(2) of the Bankruptcy Code, thus allowing them to be paid ahead of almost all other claims. "The result is that those claims that receive administrative priority status are often paid in full while lower priority claims are only partially paid." *In re Powermate Holding Corp.*, 394 B.R. 765, 772 (Bankr. D. Del. 2008). Thus, in order to preserve the Debtors' scarce resources and ensure the maximum and equitable distribution of estate assets to creditors, Bankruptcy Code provisions allowing for priority treatment should be narrowly construed. *See Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co.*, 547 U.S. 651, 667 (2006) ("To give priority to a claimant not clearly entitled thereto is not only inconsistent with the policy of equality of distribution; it dilutes the value of the priority for those creditors Congress intended to prefer"); *In re Unidigital, Inc.*, 262 B.R. 283, 288 (Bankr. D. Del. 2001). It is the claimant's burden to demonstrate by a preponderance of the evidence that its claim is entitled to administrative priority. *In re 710 Long Ridge Rd. Operating Co., II, LLC*, 505 B.R. 163, 173 (Bankr. D.N.J. 2014); *Unidigital*, 262 B.R. at 288.

The Administrative Expense Motion seeks allowance of an administrative expense claim pursuant to Section 503(b)(1)(A)(ii), which provides:

> (b) . . . there shall be allowed administrative expenses . . . including—
>
> > (1)(A) the actual, necessary costs and expenses of preserving the estate including . . .

4

> (ii) *wages and benefits* awarded pursuant to a judicial proceeding or a proceeding of the National Labor Relations Board as *back pay attributable to any period of time occurring after commencement of the case* under this title, as a result of a violation of Federal or State law by the debtor, *without regard to the time of the occurrence of unlawful conduct* on which such award is based or to whether any services were rendered, if the court determines that payment of wages and benefits by reason of the operation of this clause will not substantially increase the probability of layoff or termination of current employees, or of nonpayment of domestic support obligations, during the case under this title . . . .

(emphasis added). Congress added this subsection to the Bankruptcy Code as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. *Powermate*, 394 B.R. at 772. The body of case law analyzing Section 503(b)(1)(A)(ii) is limited. Neither the Debtors nor Mr. Sarker has cited, nor has the Court found, a case considering the statute in the context of a claimant seeking administrative expense priority for attorneys' fees, costs, and interest related to an FMLA judgment. The legislative history of Section 503(b)(1)(A)(ii), to the extent it would be relevant, is essentially non-existent. *Id.* at 778 n.73; *In re Philadelphia Newspapers, LLC*, 433 B.R. 164, 170 (Bankr. E.D. Pa. 2010). This lack of direct guidance, though, is of little concern to the Court as it is clear from the words of the statute itself that, as the Debtors argue, the attorneys' fees, costs, and interest Mr. Sarker seeks in the Administrative Expense Motion do not fall within the scope of Section 503(b)(1)(A)(ii).

The Court's conclusion is based on two observations. First, the Court finds that attorneys' fees, costs, and interest do not constitute "wages and benefits." The

Bankruptcy Code does not define "wages" or "benefits." In the absence of a statutory definition, the Court must give "the words used [in a statute] their ordinary meaning." *United States v. Diallo*, 575 F.3d 252, 257 (3d Cir. 2009). Narrowly construed, the phrase "wages and benefits" as used in Section 503(b)(1)(A)(ii) can only refer to the compensation an employee receives in return for services rendered. *Cf., e.g.*, BLACK'S LAW DICTIONARY 342-43 (10th ed. 2014) (defining "compensation" as "wages and benefits in return for services. It is payment for work."). The attorneys' fees, costs, and interest sought by Mr. Sarker in the Administrative Expense Motion are clearly not the sort of items ordinarily included in an employee's compensation package. The drafters of the FMLA evidently similarly understood the terms "wages" and "benefits" to relate solely to traditional employment-based compensation as the FMLA damages statute provides separately for "any wages, salary, employment benefits, or other compensation denied or lost," 29 U.S.C. § 2617(a)(1)(A)(i)(I), interest thereon, 29 U.S.C. § 2617(a)(1)(A)(ii), and attorneys' fees and costs, 29 U.S.C. § 2617(a)(3).

Second, the Court finds that the attorneys' fees, costs, and interest Mr. Sarker seeks in the Administrative Expense Motion do not constitute "back pay attributable to any period of time occurring after commencement of the case." The Bankruptcy Code does not define the phrase "back pay" but, again, the Court must give the phrase its ordinary meaning. *Diallo*, 575 F.3d at 257. The FMLA provides for damages in the form of "back pay and front pay or reinstatement." *Churchill v. Star Enters.*, 183 F.3d 184, 193 (3d Cir. 1999). *Accord Franzen v. Ellis Corp.*, 543 F.3d 420, 426 (7th Cir. 2008) ("An employee may be entitled to both back pay and front pay as a remedy for losses flowing from an

employer's interference with his substantive rights under the FMLA . . . ."). The United

States Court of Appeals for the Third Circuit has described back pay as follows:

> The relevant time period for calculating an award of back pay
> begins with wrongful termination and ends at the time of
> trial. . . . Back pay compensates the plaintiff for loss of past
> wages, and reinstatement insures that no future losses will
> accrue due to discrimination. Unfortunately, reinstatement is
> not always feasible, *e.g.*, because of irreparable animosity
> between the parties or . . . because of a reduction in the
> employer's work force. In such a case, back pay will still
> defray past losses, but the "alternate remedy" of front pay
> must be used to make the plaintiff whole for future expected
> losses.

*Blum v. Witco Chem. Corp.*, 829 F.2d 367, 373-74 (3d Cir. 1987) (Age Discrimination in

Employment Act context). *Accord Franzen*, 543 F.3d at 426 (in the context of an FMLA

action, defining "back pay" as "damages in an amount equivalent to . . . lost wages from

the date of [employment termination] to the date of trial").

As is the case with "wages and benefits," the phrase "back pay" clearly refers to

employee compensation for services which would have been rendered but for the

employer's illegal conduct. Put another way, "[b]ack pay claims constitute wages which

a workman has constructively earned . . . ." *710 Long Ridge*, 505 B.R. at 177 (quotation

omitted). Accordingly, as they are not items ordinarily included in an employee's

compensation package, the Court finds that attorneys' fees, costs, and interest do not

constitute back pay.

Further, the District Court conducted the FMLA Action trial on May 20 through

22, 2014, and entered the FMLA Judgment on May 27, 2014. Section 503(b)(1)(A)(ii)'s

"attributable to" language has been interpreted to mean different things by different

courts in this circuit. *Compare Powermate*, 394 B.R. at 775 ("the time to which the back pay is attributable . . . is when the rights or claims *vest* or *accrue*") *with Philadelphia Newspapers*, 433 B.R. at 174 ("Had Congress intended to condition subsection (ii) on when a right or claim for back pay 'vested' or 'accrued,' it could have said so. It did not and, for that reason, this Court will not impose that requirement on this new subsection to § 503(b)(1)(A)."). But even construing "attributable to" in a way most favorable to Mr. Sarker, under the Third Circuit's formulation of back pay, the latest date any portion of the FMLA Judgment to which back pay could conceivably be attributable is May 27, 2014. Although the District Court subsequently amended the FMLA Judgment after the Petition Date, that occurred months after the completion of the FMLA Action trial and the additional amounts included were explicitly for attorneys' fees, costs, and interest, not back pay. Back pay is a remedy which seeks to cure *past* injustices and square accounts *as of the trial*, which in this case was months prior to the Petition Date. Thus, no portion of the FMLA Judgment could possibly be both back pay and attributable to sometime after the Petition Date.

Mr. Sarker urges the Court to adopt a more expansive reading of Section 503(b)(1)(A)(ii) which would include attorneys' fees, costs, and interest awarded in conjunction with an FMLA judgment. Mr. Sarker has not cited any cases analyzing attorneys' fees, costs, and interest under Section 503(b)(1)(A)(ii), and the Court is unpersuaded that the cases Mr. Sarker has cited warrant a different result. Cases cited by Mr. Sarker discussing the sound policy behind fee-shifting and interest provisions as

contained in the FMLA or favorable treatment of attorneys' fees and costs in other contexts, such as nondischargeability,[4] are simply inapplicable.

Nor does the Section 503(b)(1)(A)(ii) provision "without regard to the time of the occurrence of unlawful conduct" language help Mr. Sarker. Regardless of when the illegal conduct occurred, in order to qualify for administrative expense priority under Section 503(b)(1)(A)(ii) the damages flowing therefrom must be attributable to sometime after the Petition Date, which the attorneys' fees, costs, and interest sought by Mr. Sarker in the Administrative Expense Motion are not. *See Powermate*, 394 B.R. at 774-75 ("A closer reading, however, reveals that the only relevant consideration is the former time, the time to which the back pay is attributable . . . ."). Accordingly, Mr. Sarker has failed to carry his burden and the Court must deny the Administrative Expense Motion.[5]

---

[4] *See, e.g., Beneficial Nat'l Bank v. Priestly* (*In re Priestly*), 201 B.R. 875, 888 (Bankr. D. Del. 1996) (finding attorneys' fees, costs, interest, and late charges ancillary to a nondischargeable debt to be nondischargeable as well).

[5] The Court is mindful "that interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982). *Accord In re Kaiser Aluminum Corp.*, 456 F.3d 328, 330 (3d Cir. 2006). The Court does not find that its interpretation of Section 503(b)(1)(A)(ii) produces an absurd result. The purpose of the Bankruptcy Code's priority provisions is to "encourag[e] lenders and others to continue or commence doing business with the debtor." *Powermate*, 394 B.R. at 772. In the case of Section 503(b)(1)(A), the purpose is to encourage employees to continue to offer their services for pay. The Court is convinced that it is not at all absurd to afford administrative priority to a back pay award but not a front pay award or other costs ancillary to an FMLA judgment. Although the legislative history provides no guidance, it is possible that Congress intended that Section 503(b)(1)(A)(ii) would apply predominantly in instances where the employee was awarded back pay in conjunction with reinstatement. Or perhaps Congress simply thought it unwise to afford post-judgment costs, which could continue to accumulate virtually unchecked, administrative priority given the devastating effect runaway administrative costs can have on a debtor's ability to reorganize.

B.    <u>Section 507(a)(4)</u>

The Sarker Claim, as filed, seeks priority treatment under Section 507(a)(4), which applies to "wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual" within the 180 days immediately preceding the Petition Date. Priority provisions such as Section 507(a)(4) are to be narrowly construed. *See Howard Delivery Serv.*, 547 U.S. at 667. The Debtors argue that the attorneys' fees, costs, and interest making up the Sarker Claim do not constitute wages, salaries, commissions, vacation, severance, or sick leave and so the Court should reclassify the Sarker Claim to a general unsecured claim. Mr. Sarker has cited no cases extending Section 507(a)(4) priority status to attorneys' fees, costs, or interest and the Court has found none. Thus, the Court is left to look to the words of the statute, giving them their ordinary meaning. *Diallo*, 575 F.3d at 257. As was the case with the Section 503(b)(1)(A)(ii) reference to "wages and benefits," construed narrowly Section 507(a)(4) is clearly meant to encompass employment-based compensation. For the reasons discussed above, attorneys' fees, costs, and interest are simply not ordinary forms of employee compensation. *See Levin v. Levine*, No. 10-62226, 2011 WL 2295272, at *2 (S.D. Fla. June 8, 2011) (denying Section 507(a)(4) priority status to attorneys' fees arising out of a Fair Labor Standards Act action). Accordingly, the Court must sustain the Claim Objection and reclassify the Sarker Claim, in full, to a general unsecured claim.

## CONCLUSION

For the reasons set forth above, the Court will deny the Administrative Expense Motion and sustain the Claim Objection. The Sarker Claim will be allowed as a general unsecured claim in the amount of $105,561.73. The Court will enter an order.


Dated: March 9, 2015

KEVIN GROSS, U.S.B.J.